UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

KERRY KEENAN,

                Plaintiff,

  - against -

PUBLICIS, INC.

                Defendant.

------------------------------------X

JUDGE RAKOFF

08 CV 01582

COMPLAINT

ECF CASE

PLAINTIFF DEMANDS
A TRIAL BY JURY

        Plaintiff Kerry Keenan ("Keenan" or "plaintiff"), by her attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complaining of defendant Publicis, Inc. ("Publicis" or "defendant"), alleges:

## NATURE OF THE ACTION

        1.    This action is brought to remedy discrimination on the basis of disability in the terms, conditions and privileges of employment under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"); the New York State Human Rights Law, Executive Law § 290 et seq. (the "Executive Law"); and § 8-107 of the New York City Charter and Code (the "City Law").

        2.    Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate equitable and legal relief.

249662 v1

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343, Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(2). Pursuant to 28 U.S.C. §1367, this Court has jurisdiction over plaintiff's Executive Law and City Law claims.

4. As the unlawful practices complained of herein occurred within the Southern District of New York, and defendant regularly does business in this District, venue is proper in the District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 12117, which incorporates 42 U.S.C. § 2000e-f(5)(3).

5. On or about February 2, 2007, plaintiff timely filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"), complaining of the acts of disability discrimination alleged herein. Plaintiff has filed this action within 90 days of receiving a notice from the EEOC informing her of her right to sue defendant in federal court. Plaintiff has thus complied fully with all prerequisites required by the ADA.

6. Pursuant to § 8-502(c) of the City Charter, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

## PARTIES

7. Keenan is a 38 year old female. She is a highly successful professional in the advertising industry.

8.  Upon information and belief, Publicis is a corporation formed under the laws of the state of New York. Publicis is a wholly owned subsidiary of Publicis Group, S.A., a French company that is one of the four largest advertising holding companies in the world. Publicis is an employer within the meaning of 42 U.S.C. § 12111(5), the Executive Law and City Law.

## FACTUAL ALLEGATIONS

Keenan's Disability

9.  In 2001, Keenan was diagnosed with idiopathic dilated cardiomyopathy ("IDC"), a disease which causes the heart to enlarge and not pump properly. As a result of her IDC, Keenan had a heart transplant on September 9, 2003. Following the heart transplant, Keenan experienced continued health problems caused by the transplanted heart and the immunosuppressant drugs that she was required to take for the transplant to be successful.

10. Even after the transplant, Keenan continues to have congestive heart failure.

11. Keenan's heart disease, the effects of the transplant, and the medication she is required to take, including immunosuppressants, have caused her numerous continuing medical problems. For example, Keenan regularly experiences fatigue, persistent low grade fevers, gastro-intestinal ailments and respiratory problems such as shortness of breath. She is also prone to infection and the flu, which exacerbate her other symptoms.

12. As a result of her heart disease, and subsequent heart transplant, Keenan is substantially limited in her ability to reproduce and bear children. She is also substantially limited in her ability to pump and circulate blood. In addition, as a consequence of heart disease and related treatments, Keenan has developed chronic insomnia, which has substantially limited her ability to sleep.

Keenan's Employment At Publicis

13. Keenan began working for Publicis in August of 2004 as a Group Creative Director. She was hired by David Droga ("Droga"), who was at that time the World Wide Creative Director for Publicis.

14. A Group Creative Director is responsible for the development of advertising campaigns for clients. Group Creative Directors are often paired off into teams of two. Droga teamed Keenan with Michael Long ("Long").

15. Long and Keenan got along very well, and the campaigns that they produced were very successful.

16. Throughout her tenure at Publicis, Keenan received positive performance reviews and bonuses.

17. In or about October 2005, Droga ceased to be employed by Publicis.

18. In or about the late winter of 2006, Keenan contracted influenza, which soon led to an upper respiratory infection and gastro-intestinal problems. Keenan has greater susceptibility to these illnesses because of her heart disease. The immunosuppressants that Keenan takes because of her heart transplant place her at greater risk for serious complications from such ailments. Accordingly, Keenan's physician advised her to go on short-term disability commencing on March 6, 2006. Keenan remained out of work until May 10, 2006.

19. Publicis was aware that Keenan's short-term disability was related to her heart disease.

20. Following Keenan's return to work, she continued to suffer from fatigue, persistent low grade fevers, gastro-intestinal ailments and respiratory problems such as shortness of breath.

21. Publicis was aware of Keenan's medical difficulties following her return to work from short-term disability leave. Publicis was also aware that those difficulties were related to Keenan's heart disease.

22. In the few months after Keenan returned from short-term disability leave, there were many days she was medically unable to come to work. In addition, there were other days when Keenan had to come in late or leave early because she was not feeling well. Moreover, Keenan generally could not work late during this period because she would be fatigued by the late afternoon. She also had to limit her weekend work because she needed to rest when possible.

23. Notwithstanding these medical difficulties, Keenan continued to perform the duties of her job.

24. On May 31, 2006, a few weeks after Keenan returned from short-term disability, Long attended a meeting with Gill Duff ("Duff"), the Chief Executive Officer of Publicis New York. Upon information and belief, during that meeting, Duff asked Long if he wanted a new partner. Long replied that he did not want a new partner.

25. On June 5, 2006, Robert Moore ("Moore"), who had replaced Droga as Publicis' Chief Creative Officer, asked Long to meet with him regarding two of the accounts that Long and Keenan worked on. Although Keenan was also responsible for these accounts, Moore did not ask Keenan to attend this meeting.

26. In or about mid-June 2006, Publicis appointed Eric Cosper ("Cosper") and Simeon Roane ("Roane") as Executive Creative Directors in New York. From that point forward, Keenan and Long reported to Cosper and Roane.

27. In July 2006, Keenan worked on a presentation of an advertising campaign

for a beer company with Cosper and Roane. When Keenan presented her work to Cosper and Roane, they asked her if she drank beer. When Keenan told them that she could not because of her health, they seemed disappointed.

28. Cosper and Roane often praised Long in Keenan's presence for work that Long and Keenan had done together; Keenan was ignored on these occasions.

29. During one of Keenan's absences from work, Cosper took Long out to lunch and, during the lunch, inquired about Keenan's health.

Keenan's Dismissal From Publicis

30. On August 18, 2006, after supervising Keenan for approximately two months, Cosper and Roane informed Keenan that she was being fired, effective immediately.

31. At no time prior to August 18, 2006 did Cosper or Roane, or anyone else from Publicis, tell Keenan that her work performance was unsatisfactory.

32. At no time prior to August 18, 2006 did Cosper or Roane, or anyone else from Publicis, warn Keenan that her job was in jeopardy.

33. During the conversation in which Cosper and Roane told Keenan that she was being fired, they said that her dismissal was not because of the quality of her work. To the contrary, Cosper and Roane said Keenan's work had been very good.

34. Cosper and Roane told Keenan that she was being dismissed because she had not been sufficiently energetic, she was not seeking out new assignments, she was not sufficiently enthusiastic, and that it seemed like Keenan was "hiding." At no time did Cosper or Roane warn Keenan about any of these purported problems prior to Keenan's dismissal.

35. Cosper and Roane knew that Keenan had been ill for much of the Summer of 2006 and that any deficiency in her "energy level" was due to her heart problems and related

medical conditions.

36. On or about the date that she was fired, Publicis provided Keenan with a document entitled "Notification of Termination." That form states that the reason for Keenan's dismissal was "position elimination."

37. In contrast, Publicis stated to the EEOC that Keenan's "employment was terminated because she failed to meet the performance standards of her position and for no other reason."

38. The reason(s) that Publicis has claimed for its firing of Keenan are a pretext for discrimination. In fact, Publicis fired Keenan because of her disability-status.

## FIRST CAUSE OF ACTION

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint as if set forth fully herein.

40. Plaintiff has had, at all relevant times, a "disability" as that term is defined in the ADA, the Executive Law, and the City Law. At all times during her employment with defendant, plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation, and therefore was at all relevant times a "qualified individual with a disability" within the meaning of the ADA.

41. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her disability, in violation of the ADA.

42. Plaintiff has suffered monetary damages as well as mental anguish and humiliation as a result of defendant's discriminatory practices.

43. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if set forth fully herein.

45. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of his disability, in violation of the Executive Law.

46. Plaintiff has suffered monetary damages as well as mental anguish and humiliation as a result of defendant's discriminatory practices.

## THIRD CAUSE OF ACTION

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her disability, in violation of the City Law.

49. Plaintiff has suffered monetary damages as well as mental anguish and humiliation as a result of defendant's discriminatory practices.

50. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's protected rights.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. declaring that the acts and practices complained of herein are in violation of the ADA, the Executive Law, and the City Law.

b. preliminarily and permanently enjoining and these violations of the ADA, the Executive Law, and the City Law.

c. reinstating plaintiff to the position she held prior to defendant's unlawful conduct;

d. directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff;

e. directing defendant to place plaintiff in the position she would have continued to occupy but for defendant's discriminatory treatment of her, and make her whole for all earnings she would have received but for defendant's discriminatory treatment, including, but not limited to, wages, bonuses, pension, and other lost benefits;

f. directing defendant to pay plaintiff compensatory damages for her mental anguish and humiliation;

g. directing defendant to pay plaintiff punitive damages for its intentional disregard of and/or reckless indifference to plaintiff's statutory rights;

h. awarding plaintiff the costs of this action together with reasonable attorneys' fees;

i. awarding such further relief as this Court deems necessary and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated:  New York, New York
        February 15, 2008

                        VLADECK, WALDMAN, ELIAS
                        & ENGELHARD, P.C.

By: _____
     Kevin T. Mintzer (KM 4741)
     Attorneys for Plaintiff
     1501 Broadway, Suite 800
     New York, New York  10036
     (212) 403-7300